IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUN LIFE ASSURANCE COMPANY OF
CANADA,

    *Plaintiff*,

    v.

MARGERY HORN, et al.

    *Defendants*.

Civil Action No. ELH-17-434

## MEMORANDUM OPINION

In this interpleader action, Sun Life Assurance Company of Canada ("Sun Life") filed suit against Margery Horn and John Simmons to resolve a dispute as to the lawful beneficiary of the proceeds under a group term life insurance policy held by Margery Horn Simmons (the "Decedent, "Ms. Simmons," or "Ann"), who died on December 1, 2016. ECF 1 (the "Complaint").[1] The insurance policy is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and was submitted as an exhibit with the suit. *See* ECF 1-1 at 1-47.

Margery Horn, the Decedent's elderly mother, and John Simmons, the Decedent's husband for some 35 years, each claim entitlement to the death benefits of $64,000 under the policy. The dispute is rooted in a power of attorney that Ms. Simmons executed in favor of her sister, Carol Parker. Relying on the terms of the power of attorney, Ms. Parker changed the beneficiary designation under the Policy from Mr. Simmons to Ms. Horn.

---

[1] Sun Life also sued Crouch Funeral Home, which has since been dismissed. *See* ECF 17; ECF 18.

Mr. Simmons filed a Third-Party Claim against Ms. Parker alleging, *inter alia*, that Ms. Simmons lacked the mental capacity to execute a valid power of attorney in favor of Ms. Parker. ECF 13 at 9. Sun Life subsequently deposited the disputed funds of $64,000 into the registry of the Court. Thereafter, it was discharged from the case. ECF 25.[2]

Now pending is a pre-discovery motion for partial summary judgment filed by Mr. Simmons (ECF 22), supported by a memorandum of law (ECF 22-2) and a Statement of Undisputed Facts (ECF 22-1 at 1-6) (collectively, the "Motion"), as well as several exhibits. *See* ECF 22-1 at 7-21. In sum, he contends that the terms of the power of attorney provided by the Decedent to Ms. Parker did not authorize Ms. Parker to change the policy's beneficiary designation. ECF 22 at 2-3. Ms. Horn and Ms. Parker jointly oppose the Motion (ECF 23), with a supporting memorandum of law (ECF 23-2) (collectively, the "Opposition") and multiple exhibits. ECF 23-3 at 1-35. Mr. Simmons replied (ECF 24, "Reply") and submitted an additional exhibit. *See* ECF 24-1.

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual Background[3]

Margery Horn Simmons, known as Ann, was the policyholder of a Sun Life group term life insurance policy, number 216716-001 (the "Policy"), which provided a death benefit of $64,000. ECF 1, ¶¶ 7-9; ECF 1-1 at 1-47 (Policy No. 216716-001); ECF 22-1 at 7-11 (undated

---

[2] The parties did not ask the Court to revise the caption of the case, so as to redesignate the plaintiff(s) and defendant(s).

[3] Because several individuals have the same surname, the Court occasionally refers to these individuals by their first names, in order to differentiate them.

Affidavit of John Simmons), ¶¶ 1, 5;[4] ECF 22-1 at 2-5, ¶ 11. Ms. Simmons became a policyholder in 2008, as a benefit of her employment with Christiana Care Health Systems. ECF 1, ¶ 8; ECF 22-2 at 4.

The Policy defines "Beneficiary" as "the person (other than the Employer) who is entitled to receive death benefit proceeds as they become due under this Policy. A Beneficiary must be named by the Employee on a form acceptable to Sun Life and executed by the Employee." ECF 1-1 at 13. Further, the Policy provides that a Beneficiary designation is generally revocable. *Id.* at 43. It adds, in Section VII (H.): "Any request for change of Beneficiary must be in a written form and will take effect as of the date the Employee signs and files the change with the Employer." *Id.*

On or about July 1, 2016, Ms. Simmons designated her husband, John Simmons, as the beneficiary of the Policy. ECF 1, ¶ 10; ECF 1-1 at 52-53 (Open Enrollment Form); ECF 23-3 at 1-2 (same); ECF 22-1 at 8, ¶ 5.[5] At the time of Ms. Simmons's death in December 2016, she was 61 years of age and had been married to Mr. Simmons for about 35 years. ECF 22-1 at 8, ¶ 1; ECF 23-3 at 25 (Certificate of Death).[6]

Mr. Simmons claims that he has been totally disabled since he was 47 years of age. ECF 22-1 at 10, ¶ 2. In August 2017, when Mr. Simmons filed his undated Affidavit (ECF 22-1 at 10-11), he was 63 years old. *Id.* at 10, ¶ 1.

---

[4] The content of ECF 22-1 at 8-9 and ECT 22-1 at 10-11 appear to be identical, with the exception that the Affidavit at ECF 21-1 at 10-11 contains Mr. Simmons's signature.

[5] There is no indication as to whether Mr. Simmons had also been named as the beneficiary on earlier occasions.

[6] No children were born to the union. ECF 22-2 at 3.

Mr. Simmons avers that during 2016, his wife "suffered from numerous medical conditions requiring lengthy hospitalizations and extensive medical treatment." *Id.* at 10-11, ¶ 6. Mr. Simmons recounts in his Affidavit that on July 29, 2016, paramedics removed his wife from their home "due to her deteriorated medical condition." *Id.* at 9, ¶ 7. According to Mr. Simmons, Ann's medical care was thereafter directed by her sister, Ms. Parker, "without consultation" with him. *Id.* at 9, ¶ 8. As noted, Ms. Simmons died on December 1, 2016. *Id.* at 9, ¶ 9.

The events of July 29, 2016, have been "the source of great controversy between the parties." ECF 22-2 at 4 n.1. It appears undisputed that on that date Ms. Simmons was at home, unconscious, "slumped" in a chair, and was covered with a blanket, despite warm temperatures both inside and outside the house. ECF 22-2 at 4 n.1; *see* ECF 23-3 at 27, ¶ 5 (Affidavit of Margery Horn); ECF 23-3 at 29-30 (Affidavit of Bonnie Horn, Decedent's sister), ¶ 5. Several of Ms. Simmons's biological family members ("family members") claim that they attempted to reach Ms. Simmons, but Mr. Simmons repeatedly insisted that she was sleeping. *See*, *e.g.*, ECF 23-3 at 27, ¶¶ 3, 4; ECF 23-3 at 29-30, ¶¶ 3, 5.

Bonnie Horn, a sister of the Decedent found Ms. Simmons "unresponsive, leaning off the arm of a recliner as if she was trying to reach the phone on the end table next to the recliner, covered in blankets . . . even though it was hot out." ECF 23-3 at 29, ¶¶ 4-5. Bonnie then called 911. *Id.* ¶ 5. According to Margery, Bonnie, and Brenda Snider, another sister of the Decedent, Mr. Simmons would not allow the emergency medical technicians ("EMT") to enter the house. ECF 23-3 at 27, ¶ 6; ECF 23-3 at 29, ¶ 7; ECF 23-3 at 28 (Affidavit of Brenda Snider). The EMTs eventually entered the house, transferred Ms. Simmons to an ambulance, and then transported her to a hospital. ECF 23-3 at 29, ¶ 8; ECF 22-1 at 9, ¶ 7; ECF 23-3 at 27, ¶ 7; ECF

23-3 at 28, ¶ 5; ECF 23-3 at 29, ¶¶ 9-10.  Bonnie avers that Mr. Simmons declined to go to the hospital with his wife.  ECF 23-3 at 29, ¶ 8.

According to the Decedent's family members, Ms. Simmons was diagnosed as having suffered several mini-strokes.  ECF 23-3 at 27, ¶ 7; ECF 23-3 at 28, ¶ 5; ECF 23-3 at 29, ¶ 9.  In addition, the family members claim that Ms. Simmons was malnourished and dehydrated.  ECF 23-3 at 27, ¶ 7; ECF 23-3 at 28, ¶ 5; ECF 23-3 at 29, ¶ 9.[7]

Ms. Simmons was transferred to the Life Care Hospital in Westchester, Pennsylvania on September 3, 2016.  ECF 23-3 at 31-32 (Affidavit of Ms. Parker), ¶ 5; *see* ECF 23-3 at 35 (Affidavit of Gary Ratliff, Decedent's friend), ¶ 2.  She was later transferred to the "Bridge Park Nursing Home" (hereinafter, "Bridge Park").  ECF 23-3 at 33 (Affidavit of Cathey Fischbein, Nursing Supervisor at Bridge Park), ¶ 2; ECF 23-3 at 34 (Affidavit of Vandella Mossenburg-Bey, Director of Social Services at Bridge Park), ¶ 1.

---

[7] No medical records were submitted with the Motion or the Opposition.  In his Reply (ECF 24), Mr. Simmons challenges the admissibility of various portions of the affidavits, including statements of Ms. Snider, Margery, and Bonnie pertaining to the medical diagnoses. *See* ECF 23-3 at 29, ¶ 9; ECF 23-3 at 27, ¶ 7; ECF 23-3 at 28, ¶ 5.  He claims they are "hearsay statements from 'the hospital[.]'"  ECF 24 at 14.  Additionally, Mr. Simmons argues that the statement in the Affidavit of Bonnie, averring that Mr. Simmons declined to go to the hospital (ECF 23-3 at 29, ¶ 8), is hearsay.  ECF 24 at 14.

In the context of a summary judgment motion, Fed. R. Civ. P. 56(c) provides that each side must support its factual assertions with citation to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and that a party may object that material cited by the other side cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  When the opposing party objects on admissibility grounds, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56, Adv. Cmte. Notes, 2010 Amend.  Because Mr. Simmons challenged admissibility in his Reply, the affiants have not had an opportunity to respond.

However, this evidence is of no moment to the disposition of the Motion.  There, Mr. Simmons argues only that the terms of the power of attorney did not authorize Parker to change the beneficiary of the Policy.  *See* ECF 22.

On October 14, 2016, while Ms. Simmons was receiving care at Bridge Park, she executed a Maryland statutory power of attorney form (the "Form"), granting power of attorney to her sister, Carol Parker. ECF 23-3 at 31, ¶ 9; ECF 23-3 at 33, ¶ 1; ECF 23-3 at 34, ¶ 2; ECF 23-3 at 33, ¶¶ 6-8. The form is titled "Maryland Statutory Form Personal Financial Power of Attorney." ECF 22-1 at 14-21; ECF 23-3 at 3-9. Ms. Simmons also gave her sister a medical power of attorney. *See* ECF 23-3 at 31-32, ¶¶ 9-10.

The execution of the Form was witnessed by a notary public (ECF 23-3 at 8), and was also witnessed by Margery Horn and Cathey Fischbein (ECF 23-3 at 9), the Unit Nursing Supervisor at Bridge Park. ECF 23-3 at 33, ¶ 1. Although Mr. Simmons asserts that it is unknown whether his wife had the mental capacity to execute a power of attorney, he contends that the matter is not material to the Motion. ECF 22-2 at 4 n.2. And, for the purpose of the Motion, Mr. Simmons "assumes, arguendo, that the power of attorney was validly executed . . . ." ECF 24 at 13.[8]

The Form (ECF 23-3 at 3-9; ECF 22-1 at 14-21) enumerates seven "general" authorities granted by the power of attorney (*see, e.g.*, ECF 23-3 at 4), as well as specific authorities pertaining to eight "subjects." *Id.* at 4-7. Notably, one of the "subjects" covered insurance and annuities. *Id.* at 5-6. That subject states, in relevant part, *id.* at 4: "I authorize my agent to . . . modify . . . a contract procured by . . . the principal that insures . . . either the principal or another person, whether or not the principal is a beneficiary under the contract . . . ."

Exercising the power of attorney on behalf of Ms. Simmons, Parker filed a petition in the District Court for Baltimore City on October 14, 2016, seeking a protective order against Mr. Simmons on behalf of Ms. Simmons. ECF 23-3 at 14-15 (Addendum to Petition for Protective

---

[8] Nonetheless, in their Opposition, Parker and Horn address these issues at length. *See* ECF 23-2 at 10-12.

Order); ECF 22-2 at 2 n.1. The petition appears to allege elder abuse and neglect by Mr. Simmons in regard to the events of July 29, 2016. ECF 22-2 at 4, n.1.[9] By consent, Parker, on behalf of Margery Simmons, and Mr. Simmons, entered a Final Protective Order (ECF 23-3 at 10-13), in which Mr. Simmons did not admit fault. *Id.* at 11. Under the Final Protective Order, Mr. Simmons was barred from abusing, threatening to abuse, or harassing Ms. Simmons. *Id.* at 11, ¶ 2. Additionally, he was granted visitation with Ms. Simmons under the supervision of hospital staff, until such time as Ms. Simmons terminated his visitation. *Id.* at 11, ¶ 3.

Of import here, Parker avers that Ms. Simmons asked her to change the beneficiary under the Policy from Mr. Simmons to Margery Horn. ECF 23-3 at 32, ¶ 11. On or about November 1, 2016, Ms. Parker submitted a change of beneficiary request to Sun Life, designating her mother, Margery Horn, as the beneficiary under the Policy. ECF 1, ¶ 12; ECF 1-1 at 55-56 (Change of Beneficiary Form).

According to email correspondence between Parker and Deborah Breen, the ERISA benefits plan manager at Sun Life, Parker indicated in November 2016 that Ms. Simmons wanted to name their mother, Margery Horn, as the beneficiary of the Policy. ECF 23-3 at 17-18 (emails). Ms. Breen wrote: "If you can get Margery to sign a form stating she wishes to change her beneficiary . . . that would be perfect." *Id.* at 18. Ms. Parker responded: "Margery probably can't now which is why I have POA. I have asked her and she said she wants our mother, Margery Horn, to be the beneficiary." *Id.* By email correspondence of November 7, 2016 (ECF

---

[9] The parties did not provide the Court with a copy of the initial petition filed in the District Court for Baltimore City.

23-3 at 17), Breen informed Parker that the "POA is approved. Beneficiary updated as requested . . . ." *Id.*[10]

As noted, on December 1, 2016, Ms. Simmons died at Sinai Hospital in Baltimore. ECF 23-3 at 25; ECF 22-1 at 9, ¶ 9. On December 2, 2016, Mr. Simmons submitted a claim for benefits under the Policy. ECF 1, ¶ 14; ECF 1-1 at 60-61 (Death Claim Submission Form). On that same date, he submitted an Irrevocable Power of Attorney under which he assigned $9,875 of any interest he may have had in the Policy's proceeds to Crouch, which handled the funeral. ECF 1, ¶ 15; ECF 1-1 at 63 (Irrevocable Assignment and Power of Attorney Form submitted by Mr. Simmons). Margery Horn submitted a claim for benefits under the Policy on December 12, 2016. ECF 1, ¶ 16; ECF 1-1 at 65-68 (Death Benefits Claim Packet submitted by Margery Horn). This suit followed.

## II.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex*, 477 U.S. at 322-24; *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party

_____

[10] In his Reply, Mr. Simmons vigorously argues that the statements in the emails between Parker and Breen (ECF 23-3 at 17-18), and in a portion of Parker's Affidavit (ECF 23-3 at 32, ¶ 11), are hearsay. *See* ECF 24 at 5, 9-11, 14. Additionally, Mr. Simmons argues that the emails between Parker and Breen do not comply with Fed. R. Civ. P. 56(c)(1)(A). *Id.* at 14. As noted, because Mr. Simmons raised the issue of admissibility in his Reply, Parker and Margery Horn have not had an opportunity to respond. However, the admissibility of these statements is inapposite to the Motion. The Motion raises the issue of whether terms of the power of attorney authorized Parker to change the beneficiary of the Policy. ECF 22. Accordingly, I may resolve the Motion without relying on ECF 23-3 at 17-18 and ECF 23-3 at 32, ¶ 11.

demonstrates entitlement to judgment as a matter of law.").  The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24.  As indicated,

the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

## III. Discussion

### A.

The Motion presents a limited issue. Mr. Simmons argues that, as a matter of law, the terms of the power of attorney executed by the Decedent did not authorize Parker, the agent, to change the beneficiary under the Policy. ECF 22 at 2-3. According to Mr. Simmons, the Form granting Parker a power of attorney (*see, e.g.*, ECF 23-3 at 5-6) does not contain language that "clearly and specifically" grants the authority to "change beneficiaries of a life insurance policy." ECF 22-2 at 3. Therefore, he claims that "[t]he purported change of beneficiary . . . was an unauthorized, and hence, invalid act . . . ." ECF 22 at 3. Further, he asserts that "whether a power of attorney authorizes the agent/attorney-in-fact to perform a specific act is regarded as a pure question of law." ECF 22-2 at 2. Mr. Simmons relies on the case *King v. Bankerd*, 303 Md. 98, 105, 492 A.2d 608, 611 (1985), for the proposition that "powers of attorney are 'strictly construed as a general rule and [are] held to grant only those powers which are clearly delineated[.]'" ECF 22-2 at 8 (quoting *King*, 303 Md. at 105, 492 A.2d at 611) (alterations in original).

In support of his argument, Mr. Simmons points out that the "words 'change the beneficiary' of a life insurance policy do not appear in the list of specific powers" in the power of attorney. *Id.* at 5. Relying on *King*, 303 Md. at 105, 492 A.2d at 611, he contends that the absence of these words from the Form means that Parker lacked authority to remove Mr. Simmons as the beneficiary of the Policy. *Id.* at 11-12.

Further, Mr. Simmons maintains that the Form is a financial power of attorney, which named Ms. Parker as Ann's attorney-in-fact. ECF 22 at 2, ¶ 2. He points out that "no change form or substitute form signed by the insured . . . was ever submitted." ECF 24 at 4. Thus, he

claims that Parker and Margery did not substantially comply with the procedures outlined in the Policy to change a beneficiary. *Id.* at 4. He also maintains in his Reply that the use of a power of attorney pursuant to State law "may come in contact with an employee benefit plan," but it is "clearly" not "related to" such a plan. *Id.* at 5.

In their Opposition (ECF 23-2), Ms. Parker and Margery Horn argue that "'whether the beneficiary to a life insurance policy has been changed is a question of fact.'" *Id.* at 7 (quoting *Phoenix*, 30 F.3d at 562). Additionally, they argue that the factual record shows that the Policy beneficiary was changed from Mr. Simmons to Margery in accordance with Ms. Simmons's wishes and in her best interests. ECF 23-2 at 7-10.[11] Parker and Margery rely on *King*, *supra*, for the proposition that "'the rule of strict construction'" does not "'override the general and cardinal rule that the court determine the intention of the parties'" from "'the language used in the instrument and the object to be accomplished in light of the surrounding circumstances.[1]'" ECF 23-2 at 7-8 (quoting *King*, 303 Md. at 105, 492 A.2d 611).

**B.**

As noted, the Policy is governed by ERISA. The ERISA statute was "enacted to protect the interests of participants in employee benefit plans and their beneficiaries . . . ." *Marks v. Watters*, 322 F.3d 316, 322 (4th Cir. 2003); *see* 29 U.S.C. § 1001(b). It does so, *inter alia*, by setting "'various uniform standards [for employee benefit plans], including rules concerning reporting, disclosure, and fiduciary responsibility.'" *Retail Indus. Leaders Assoc. v. Fielder*, 475 F.3d 180, 190 (4th Cir. 2007) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983));

---

[11] In their Opposition, Margery and Parker also assert that no undue influence was exercised as to Ms. Simmons, and that Ms. Simmons had the mental capacity to appoint Parker as her agent. ECF 23-2 at 10-12; ECF 23-3 at 33; ECF 23-3 at 34. They do not explain why Ms. Simmons did not sign a change of beneficiary form. In any event, Mr. Simmons correctly notes that issues of capacity and undue influence are not relevant to the limited question presented in the Motion.

*see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44-45 (1987). In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), the Supreme Court said: "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" (Citation omitted).

ERISA's provisions preempt all state laws that "relate to" any employee benefit plan, unless the saving clause applies. 29 U.S.C. §§ 1144(a), 114(b)(2). The saving clause exempts from preemption any state law that "regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Court in *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 559 (4th Cir. 1994) ("*Phoenix*") explained: "Cases arise in which state laws are preempted because they 'relate to' employee benefit plans and because they do not 'regulate' the insurance industry. In those cases, if ERISA does not provide any guidance on the issue before the court, the court may be in a position to create or apply federal common law."[12]

"For ERISA preemption purposes, 'State law' includes both statutory and common law." *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir. 1996) (citing 29 U.S.C. § 1144(c)(1)). And, ERISA preemption is typically construed broadly. *Tr.'s of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Serv.'s, Inc.*, 791 F.3d 436 (4th Cir. 2015) (citing, *inter alia*, *Phoenix*, 30 F.3d at 563).

---

[12] In his Motion, Mr. Simmons did not address the issue of preemption under ERISA. *See* ECF 22; ECF 22-2. In their Opposition, Margery Horn and Ms. Parker note that ERISA has a broad preemption provision and that federal common law applies when ERISA is silent as to a provision of an ERISA policy. ECF 23-2 at 6. However, the Opposition provides no guidance as to whether ERISA preempts state law in this lawsuit. *See* ECF 23; ECF 23-2. Mr. Simmons summarily argues in his Reply, *inter alia*, that powers of attorney do not relate to ERISA for the purpose of preemption. ECF 24 at 5. The parties did not address ERISA's savings clause.

The Fourth Circuit has noted that the term "relates to" is "not so clearly defined[.]" *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 861 (4th Cir. 1998) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)) ("Taken at its face value, the term 'relates to' has no logical boundary . . . . In one way or another, everything relates to everything else."). As the *Phoenix* Court noted, 30 F.3d at 560, the phrase "'relate to'" is "'given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase . . . .'" (Alteration in *Phoenix*) (quoting *Pilot Life Ins. Co.*, 481 U.S. at 47).

In the context of ERISA preemption, a "state law relates to an employee benefit plan if it has a *connection with*, or a *reference to*, such a plan." *Pettit*, 164 F.3d at 861-62 (citing, *inter alia*, *Shaw*, 463 U.S. at 96-97). Additionally, when a state law "'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs." *Pettit*, 164 F.3d at 861 (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 99 (1993)). But, "courts considering ERISA–regulated plans often apply general principles of contract law, insurance law or trust law that do not conflict with the Congressional purpose of enacting ERISA." *Jenkins v. Montgomery Industries, Inc.*, 77 F.3d 740, 744 (4th Cir. 1996) (citations omitted).

"ERISA is silent as to any provisions regarding the change in beneficiaries." *SunTrust Bank v. Aetna Life Ins. Co.*, 251 F. Supp. 2d 1282, 1292 (E.D. Va. 2003) (*citing Phoenix*, 30 F.3d at 562). And, "where ERISA is silent, federal common law applies." *SunTrust Bank*, 251 F. Supp. 2d at 1292 (citation omitted). The Fourth Circuit said in *Phoenix*, 30 F.3d at 559: "Congress . . . intended that the courts would 'develop a federal common law of rights and obligations under ERISA-regulated plans.'" *Id.* (quoting *Singer v. Black & Decker Corp.*, 964

F.2d 1449, 1452 (4th Cir.1992)).  However, a court may look to state law to guide its analysis of federal common law.  *See Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013) ("Although courts apply federal common law rules of contract interpretation when construing a policy governed by ERISA . . . we look to 'principles of state common law to guide our analysis[.]'") (quoting *Wheeler v. Dynamic Eng'g*, Inc., 62 F.3d 634, 638 (4th Cir. 1995)) (additional citations omitted); *see also Davis v. Adelphia Commc'ns Corp.*, 475 F. Supp. 2d 600, 604 (W.D. Va. 2007) (citation omitted).

In Maryland, a power of attorney is "a writing or other record that grants authority to an agent to act in the place of the principal . . . ."  Md. Code (2017), § 17-101(d) of the Estates & Trusts Article ("E.T.").  As Judge Hazel of this Court has explained:  "A Power of Attorney 'is a written document by which one party, as principal, appoints another as agent (attorney in fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal.'"  *CMFG Life Ins. Co. v. Schell*, GJH-13-3032, 2016 WL 393858, at *3 (D. Md. Jan. 29, 2016) (quoting *King v. Bankerd*, 303 Md. at 105, 492 A.2d at 611).  Notably, a power of attorney "is a contract of agency that creates a principal-agent relationship."  *King*, 303 Md. at 105, 492 A.2d at 611.  To the extent "other laws applicable to financial institutions or other entities" are "inconsistent" with Title 17 of the E.T. Article, which governs powers of attorney in Maryland, those "other laws prevail."  E.T. § 17-115.

Of import here, a power of attorney is "'construed narrowly and deemed to grant only those powers which are clearly expressed in the document.'"  *Schell*, 2016 WL 393858, at *3 (quoting *Pension Comm. Heileman-Baltimore Local 1010 IBT Pension Plan v. Bullinger*, 1992 WL 333653, at *3 (D. Md. Oct. 29, 1992)); *see King*, 303 Md. at 105, 492 A.2d at 611.  Moreover, questions concerning powers of attorney are typically controlled by state law.  *See*

*Estate of Casey v. C.I.R.*, 948 F.2d 895, 898 (4th Cir. 1991); *see also Schell*, 2016 WL 393858, at *3; *JHF Vista USA, Ltd.*, 2010 WL 481327, at *3. "'Courts should determine the parties' intent by evaluating the language and purpose of the document 'in light of the surrounding circumstances.'" *Schell*, 2016 WL 393858, at *3 (quoting *JHF Vista USA, Ltd. v. John S. Connor, Inc.*, CCB-09-30, 2010 WL 481327, at *3 (D. Md. Feb. 5, 2010)).

In *Phoenix*, 30 F.3d at 556-57, a life insurance policyholder instructed his employer's financial accounting manager to change the beneficiary on his life insurance policy, which was governed by ERISA. The financial manager made a note about the policyholder's request but failed to effectuate the change of beneficiary. *Id.* at 557-58. A provision of the policy at issue required the policyholder to change the beneficiary through a written notice to the employer, signed by the insured, and filed in one of several locations. *Id.* at 556. The Court considered, *inter alia*, whether South Carolina's rule of "substantial compliance" controlled the policyholder's attempted change of beneficiary, or whether ERISA preempted state law and required the district court to apply federal common law. *Id.*

The Court determined that South Carolina's "substantial compliance" doctrine, as used to evaluate the change of beneficiary provision in the policy itself, "relates to" that plan. *Id.* at 559-61. Because the Court found that South Carolina's "substantial compliance" doctrine did not regulate the insurance industry, the Court concluded that ERISA's "saving clause" did not prevent preemption. Accordingly, the Court agreed with the district court that preemption was appropriate in that case. *Id.* at 561.

In reaching its conclusion with regard to the "saving clause," the Court applied a three-factor inquiry. Specifically, the Fourth Circuit stated, 30 F.3d at 560 (quoting *Pilot Life Ins. Co.*, 481 U.S. at 48-49):

First, a court must take what guidance is available from a "common-sense" view of the language of the saving clause itself. Second, the court must examine what are known as the *McCarran-Ferguson* factors: (1) "whether the [law] has the effect of transferring or spreading a policyholder's risk"; (2) "whether the [law] is an integral part of the policy relationship between the insurer and the insured"; and (3) "whether the [law] is limited to entities within the insurance industry."

Given the limited issue presented in the Motion, coupled with the parties' failure to address adequately whether the power of attorney relates to the Policy, or whether the saving clause applies, I need not resolve issues of preemption at this juncture. Rather, I shall address the sole issue raised in the Motion: whether, as a matter of law, the power of attorney, by its terms, authorized Ms. Parker to change the beneficiary under the Policy.

### C.

E.T. § 17-110(a) sets forth the requirements for execution of a power of attorney. It states that a "power of attorney . . . shall be (1) In writing; (2) Signed by the principal or by some other person for the principal, in the presence of the principal, and at the express direction of the principal; (3) Acknowledged by the principal before a notary public; and (4) Attested and signed by two or more adult witnesses who sign in the presence of the principal and in the presence of each other." *Id.* And, "[t]he notary public . . . may also serve as one of the two or more adult witnesses." E.T. § 17-110(b).[13]

A power of attorney creates a contract of agency, establishing a principal-agent relationship. *King*, 303 Md. at 105, 492 A.2d at 611 (citing RESTATEMENT (SECOND) OF AGENCY § 34 (1958));[14] *see also Figgins v. Cochrane*, 403 Md. 392, 415, 942 A.2d 736, 750 (2008). But, "a power of attorney is not a contract." *Jordan v. Osmun*, 16-cv-501, 2016 WL 7173784, at *7

---

[13] As indicated, for the purpose of his Motion, Mr. Simmons does not contest that the power of attorney was validly executed. ECF 24 at 13.

[14] The Restatement (Third) of Agency was published in 2006.

(E.D. Va. Dec. 8, 2016) (citing *Burdell v. Denig*, 92 U.S. 716, 720 (1875)) ("A contract is not revocable at the pleasure of the maker but a power of attorney is."). As the *Jordan* Court noted, in contrast to a power of attorney, a contract requires "'acceptance of an offer, as well as valuable consideration.'" 2016 WL 7173784, at *7 (citation omitted). Moreover, unlike a contract, a power of attorney is "revocable at the pleasure of the maker . . . ." *Id.*

Under E.T. § 17-113(a)(1), an "agent that has accepted appointment shall . . . (1) Act in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, act in the principal's best interest[.]" But, E.T. § 17-113(a)(3) requires that the agent shall act "only within the scope of authority granted in the power of attorney." Thus, the agent must fulfill the principal's reasonable expectations but may not exceed the scope of authority, as defined by the power of attorney agreement.

The Form executed by the Decedent (ECF 23-3 at 3-9; ECF 22-1 at 14-21) is nearly identical to the financial power of attorney form established by the Maryland Code. The Form at E.T. § 17-202 is titled "Maryland Statutory Form Personal Financial Power of Attorney." (Capitalization omitted). *See* § 17-201(a) ("A document substantially in one of the forms set forth in this subtitle may be used to create a statutory form power of attorney that has the meaning and effect prescribed by this title."); § 17-101(g) ("'Statutory form power of attorney' means a power of attorney that is substantially in the same form as one of the powers of attorney set forth in Subtitle 2 of this title."). "A person may not require an additional or different form of power of attorney for any authority granted in a statutory form power of attorney." E.T. § 17-101(a).[15]

---

[15] E.T. § 17-105 references a "Durable power of attorney," which is "exercisable notwithstanding the principal's subsequent disability or incapacity." *Id.*

The Form consists of several sections, the first of which provides "IMPORTANT INFORMATION AND WARNING." ECF 23-2 at 3 (capital letters in original). That section states, in relevant part, *id.*:

> The powers granted by you (the principal) in this document are broad and sweeping. . . . If you choose to grant less than all of the listed powers, you may instead use a Maryland Statutory Form Limited Power of Attorney and mark on that Maryland Statutory Form Limited Power of Attorney which powers you intend to delegate to your attorney-in-fact (the Agent) and which you do not want the Agent to exercise.

Ms. Simmons did not limit Parker's authority by executing a Maryland Statutory Form Limited Power of Attorney. *See* E.T. § 17-203. Rather, she executed a Form that granted Parker all of the authorities enumerated in the Form. *See* ECF 23-3 at 3-9; ECF 22-1 at 14-21; *see also* E.T. § 17-202. The section of the Form titled "SUBJECTS AND AUTHORITIES" is relevant. ECF 23-3 at 4-7 (capital letters in original). It states, in part, *id.* at 5 (bold in original, italics added):

> **Insurance and annuities –** With respect to this subject, I authorize my agent to: continue, pay the premium or make a contribution on, *modify*, exchange, rescind, release, or terminate a contract procured by or on behalf of the principal that insures or provides an annuity to either the principal or another person, whether or not the principal is a beneficiary under the contract; . . . .

The Form covers contracts that are "procured by or on behalf of the principal." ECF 23-3 at 5. Ms. Simmons procured the Policy, a group term life insurance policy, as a benefit of her employment with Christiana Care Health Systems. ECF 1, ¶¶ 7, 8; ECF 1-1 at 1-47. Additionally, the Form applies to a contract that "insures." ECF 23-3 at 5. In the context of the heading, "Insurance and annuities", the scope of the power of attorney appears to apply to insurance policies generally, regardless of "whether or not the principal is a beneficiary under the contract." *Id.*

Under E.T. § 17-103, the principal's spouse, parent, or an individual named as a beneficiary to receive property on the principal's death "may petition a court to construe a power of attorney or the agent's conduct." *Id.* There is no indication that Mr. Simmons has filed such an action.

Like Parker and Horn, Mr. Simmons relies on *King v. Bankerd*, *supra*, 303 Md. 98, 492 A.2d 608. He argues that *King* supports his position that the power of attorney did not authorize a change of beneficiary. *See* ECF 22-2 at 8-16.

In *King*, a husband and wife owned a Maryland home as tenants by the entirety. *Id.* at 102, 492 A.2d at 610. Before leaving Maryland to live in another state, the husband executed a power of attorney authorizing Mr. King, an attorney, "to 'convey, grant, bargain and/or sell'" the husband's property. *Id.* at 101-02, 492 A.2d at 609-10. Although the husband moved out of state, his wife remained in their Maryland home. *Id.* at 103, 492 A.2d at 610. After approximately ten years without receiving word from the husband, the agent came to believe that the husband was either deceased or had abandoned his interest in the home. *Id.* at 103, 492 A.2d at 610. The agent subsequently conveyed the husband's interest in the home, without consideration, to the wife. *Id.* at 103, 492 A.2d at 610. Three years later, the husband filed suit against the agent, arguing the power of attorney did not authorize the agent to make a "gratuitous transfer" of the husband's property. *Id.* at 101, 492 A.2d at 609-10.

The trial court granted summary judgment in favor of the husband, finding that King exceeded the authority granted to him by the power of attorney. *Id.* at 104, 492 A.2d at 611. The Maryland Court of Appeals affirmed. *Id.* at 104, 113, 492 A.2d at 611, 615. The Maryland Court of Appeals stated:

> [O]ne "well settled" rule is that powers of attorney are "strictly construed as a general rule and [are] held to grant only those powers which are clearly

delineated[.]" Although our predecessors recognized this rule over a century ago in *Posner v. Bayless*, 59 Md. 56 (1882), they were careful to note that the rule of strict construction "cannot override the general and cardinal rule" that the court determine the intention of the parties. *Id.* at 60. To ascertain this intent, the *Posner* Court emphasized that the language used in the instrument and the object to be accomplished be viewed in light of the surrounding circumstances.

*Id.* at 105, 492 A.2d at 611 (citations omitted).

Applying this two-part rule to the facts before it, the court determined that a "strict construction" of the "general power of attorney executed by [the principal] authorized [the agent] to 'convey, grant, bargain and/or sell' the subject property 'on such terms as to him may seem best,'" but "did not expressly authorize a gratuitous transfer of property." *Id.* at 112, 492 A.2d at 615. Looking to the "facts and surrounding circumstances" relating to the power of attorney at issue, the court noted that the agent's "beliefs" that the husband was either deceased or had abandoned his interest in the home did not show the husband "intended" for the agent to "give the property away." *Id.* at 112, 492 A.2d at 615. The court also considered a letter sent from the husband to the agent, indicating that the husband "anticipated maintaining his interest in the property." *Id.* at 13, 492 A.2d at 615. Therefore, based on the surrounding circumstances, the court was unable to identify any facts or inferences showing that the agent was authorized to make a gift of the principal's real property. *Id.* at 112-13, 492 A.2d at 615.

Mr. Simmons is correct that the words "'change the beneficiary'" do not appear in the Form. ECF 22-2 at 5. But, the terms of the power of attorney expressly authorize the agent to "continue, pay the premium or make a contribution on, *modify,* exchange, rescind, release, or terminate . . ." an insurance policy. ECF 23-3 at 5 (emphasis added). Title 17 of the Maryland Estates and Trusts Article of the Code does not define the word "modify." *See* E.T. § 17-101, *et*

*seq.* The parties have provided little guidance as to the meaning of the word "modify", as used in the Form, or how to construe it.[16]

In *King*, the power of attorney was not a creation of statute. The court did not employ contract or statutory principles of construction to aid in its analysis. But, the power of attorney form used here is one that was enacted by the Maryland General Assembly.

Assuming that a form enacted by a legislature is tantamount to a statute, "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274, 987 A.2d 18 (2010). Our analysis is guided by the plain language of the statute. *Id.* Ordinarily, if the language of a statute is unambiguous, our inquiry as to legislative intent comes to an end. *Lockshin*, 412 Md. at 275, 987 A.2d 18. If a statute is ambiguous, however, we look to the "legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.* at 276, 987 A.2d 18. Maryland courts often use dictionary definitions when construing ambiguous statutory language. *See James McHugh Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 223 F. Supp. 3d 462, 468 (D. Md. 2016) (citing *Bottini v. Dep't of Fin.*, 450 Md. 177, 195, 147 A.3d 371, 382 (2016), and *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533, 538 (2000)).

The word "modify," as used in the power of attorney Form, is one that appears to have an ordinary meaning. The word "modify" connotes an alteration or a change. The Supreme Court has stated that the word "modify . . . connotes moderate change." *MCI Telecomm.'s Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 (1994) (citations omitted). However, in the posture of

---

[16] The parties have not addressed principles of statutory or contract construction.

this case, I am unable to determine, as a matter of law, whether the word "modify" permits or precludes a change in beneficiary.

As the Maryland Court of Appeals explained in *King*, a court must be "careful to note" the "general and cardinal rule" that requires the determination of the parties' intentions as to the scope of the power of attorney agreement. *King*, 303 Md. at 105, 492 A.2d at 611 (citation omitted). Accordingly, the power of attorney and "the object to be accomplished" by it must "be viewed in light of the surrounding circumstances." *Id.* at 105, 492 A.2d at 611 (citation omitted).

Parker and Margery Horn have presented evidence that Ms. Simmons intended to authorize the change in beneficiary. They point to the incident of July 29, 2016. *See* ECF 23-2 at 8-10. They also submitted numerous affidavits suggesting Ann feared and disliked Mr. Simmons, particularly after the incident of July 29, 2016. For example, Snider avers that, after the events of July 29, 2016, she "noticed on several occasions that [Ms. Simmons] seemed to be afraid of John Simmons." ECF 23-3 at 28, ¶ 6; *see also* ECF 23-3 at 26 (Affidavit of Dorthy Carroll), ¶ 9. Parker avers that, while Ms. Simmons was in the hospital, Parker observed her pull her arm away from Mr. Simmons, as if she were afraid of him. *Id.* at 31, ¶ 7. Moreover, Cathey Fischbein, the Unit Nursing Supervisor at Bridge Park, avers that "it was made known to [her] by Ms. Simmons and others that [Ms. Simmons] wanted to have nothing to do with her husband, John Simmons." *Id.* at 33, ¶ 3. And, Vandella Mossenburg-Bey, the Director of Social Services at Bridge Park, avers that "Ms. Simmons made it clear that she did not want to have her husband near her and all indications were that she was afraid of him." *Id.* at 34, ¶ 4. Similarly, Gary Ratliff, a longtime friend of Ms. Simmons, states in his Affidavit that it was "obvious" to him that "there was substantial friction between Ann and her husband." *Id.* at 35, ¶ 7.

However, given the prediscovery posture of the case, Mr. Simmons has not yet had an opportunity to explore the "surrounding circumstances."[17] Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016); *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). As the Fourth Circuit stated in *McCray*, 741 F.3d at 483, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC*, 2016 WL 6958439, at *2.

To be sure, as the movant, Mr. Simmons has not argued that he is in need of discovery. But, this is understandable, given his contention that, as a matter of law, the power of attorney did not authorize a change of beneficiary.

### IV.    Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 22). An Order follows, consistent with this Memorandum Opinion.

Date:   February 5, 2018                         _____/s/_____
                                                  Ellen Lipton Hollander
                                                  United States District Judge

---

[17]    Even assuming that the word "modify" were construed to permit a change in beneficiary, the parties would have a right to explore the issues of undue influence and capacity.